IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

PAUL SALAZAR,

    Plaintiff,

vs.                                                          No. 13-cv-00162-JCH/RHS

CITY OF ALBUQUERQUE,
RICHARD BERRY, Mayor,
ROBERT J. PERRY, Chief Administrative Officer,
VINCENT YERMAL, Director of Human Resources,
CITY PERSONNEL BOARD and
PAULA FORNEY, Attorney,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Paula Forney's Motion to Dismiss (ECF No. 24). The Court, having considered the motion, briefs, pleadings, applicable law, and otherwise being fully advised, concludes that Defendant Forney's motion should be granted and the case against her should be dismissed.

**I.    FACTUAL BACKGROUND**

Defendant Paula Forney was an Assistant City Attorney, and later was employed as a contract attorney for the City of Albuquerque (the "City"). Compl. ¶ 4, ECF No. 1-1. Plaintiff Paul Salazar was employed by the City as a Motor Coach Operator (bus driver) beginning on March 25, 2000. *Id.* ¶¶ 1, 6.

In 2002, Mr. Salazar's ex-wife accused him of improperly touching their daughter during a court-approved visitation. *Id.* ¶ 7. On October 11, 2006, Mr. Salazar pled "no contest" to the charge of attempted touching of his daughter. *Id.* ¶ 8. The state court entered an Order of

Conditional Discharge stating that the charges would be dismissed against him "without adjudication of guilt," and the charges were subsequently dismissed. *See id.* ¶ 8.

In January 2007, the Transit Department placed Mr. Salazar on "administrative leave pending investigation," and on July 6, 2007, the City terminated his employment because he was "a convicted sex offender." *Id.* ¶ 10. Mr. Salazar requested a hearing to challenge his termination, and after a three-day evidentiary hearing, on June 11, 2008, the City Personnel Board ordered the City to reinstate Mr. Salazar with back pay and benefits. *Id.* ¶ 11. The City appealed the decision to state district court. *Id.* ¶ 13. On January 7, 2009, the district court affirmed the Personnel Board's order on due process grounds and remanded the case for the Personnel Board to determine whether the City had just cause to terminate him. *Id.* ¶ 14. On remand, the Personnel Board held there was no just cause for his termination and ordered the City to reinstate Mr. Salazar with back pay and benefits. *Id.* ¶ 15. The City appealed the ruling to state district court. *Id.* On January 4, 2010, Ms. Forney wrote to Mr. Salazar's attorney, Paul Livingston, explaining that the City decided to reinstate Mr. Salazar "to a position with the City," Mr. Salazar would need to pass a physical and other tests, the City would pay back wages, and the City would dismiss its appeal. *Id.* ¶ 16.

News reports surfaced, however, indicating that Mayor Berry's administration would reinstate him for work, but not as a bus driver. *See id.* ¶¶ 18-19. In July 2010, Mr. Salazar filed a lawsuit in the United States District Court for the District of New Mexico, *Salazar v. City of Albuquerque*, No. Civ. 10-645 JB/ACT ("*Salazar* I"). *Id.* ¶ 20.

On September 9, 2010, the City ordered Mr. Salazar to report to the Solid Waste Management Department on September 13, 2010. *Id.* ¶ 24. Counsel for Mr. Salazar told the City that the transfer to Solid Waste was unacceptable. *Id.* ¶ 25. On September 17, 2010, the

City sent Mr. Salazar a Notice of Pre-Determination Hearing for violating orders in failing to report to work. *Id.* ¶ 26 & n.1. At the hearing, it was found that Mr. Salazar violated provisions in failing to report to work at Solid Waste. *See id.* ¶ 27. Mr. Salazar challenged this determination, and following an evidentiary hearing, the City on December 16, 2010, dropped the disciplinary charges concerning the transfer. *Id.* ¶¶ 28-29.

On April 12, 2011, the City reinstated Mr. Salazar to the position of Motor Coach Operator with the Transit Department effective April 23, 2011, without the approval or agreement of Mr. Salazar or his attorney. *Id.* ¶ 30. Mr. Salazar failed to appear for work, because he and his attorney were not consulted and believed the reinstatement to be a pretext, not meaningful employment. *See id.* ¶¶ 30-31. On October 8, 2011, the Personnel Hearing Officer issued findings and conclusions regarding the termination, finding against the City on Mr. Salazar's termination for failing to report to Solid Waste and recommending full reinstatement, back pay, and attorneys' fees. *See id.* ¶¶ 33-36.

At the hearing before the Personnel Board on November 9, 2011, Ms. Forney, representing the City, answered questions from the Personnel Board regarding Mr. Salazar's case. *See id.* ¶¶ 37-38. When a board member asked whether the grievance for the Solid Waste transfer would remain open if they reinstated Mr. Salazar to Transit, Ms. Forney replied, "I think it would go away because he's been given whatever he has requested. He wants to go to Transit. So we're agreeing to that. He – we're going to send him to Transit to be a bus driver." *Id.* ¶ 38. The board member then asked why that would require an order from the board. *Id.* Ms. Forney responded, "Because he won't show up. He won't appear for work. That's why he was fired. He – Mr. Livingston says he will not show up for work." *Id.*

After returning from a closed meeting of the board members, the board chairman announced that the Personnel Board found for the City and asked Ms. Forney, as the prevailing party, to take a shot at drafting their modified proposed findings and conclusions of law for them. *See id.* ¶ 40.  Ms. Forney prepared the City's Modified Findings of Fact and Conclusions of Law Adopting and Rejecting the Recommendations of the Hearing Officer ("Modified Findings"). *Id.* ¶ 41.

On December 16, 2011, Chairman Ryan Randal signed and approved the Modified Findings. *See id.* ¶ 43; Modified Findings, ECF No. 1-1 at 25-27 of 27.  According to the Modified Findings, the Personnel Board adopted in part and rejected in part the recommendations of the Hearing Officer and entered its own findings of fact and conclusions of law. *See* Modified Findings, ECF No. 1-1 at 25-27 of 27.  The Board found that there was no provision in the City rules and regulations for the payment of attorney's fees; that Mr. Salazar must comply with the procedures for reinstatement to Motor Coach operator, including passing a physical and alcohol/drug test; that the City could deduct from back wages any amount received by Mr. Salazar for unemployment compensation and outside earnings; and that Mr. Salazar should only receive back pay until April 23, 2011, when he declined to appear for work at Transit, and that he would not be entitled to receive back pay after April 23, 2011, until he appears for work and is reinstated. *See id.*  The Board ordered Mr. Salazar to be reinstated, with no loss of pay or benefits and removal of reference to the disciplinary action in his employment file; the City to pay back wages through April 23, 2011, reduced by compensation he received from outside sources; Mr. Salazar to provide a statement of unemployment compensation and outside earnings for the period from September 14, 2010, through April 23, 2011. *Id.* at 26 of 27.  Mr. Salazar appealed the order. *Id.* ¶ 44.

On January 17, 2012, the City issued a Notice to Report for CDL Physical and Drug Screen to Return-to-Work. *Id.* When Mr. Salazar failed to report to work, the City, under Ms. Forney's direction, ordered his termination on March 28, 2012 for failure to report to work, as ordered by the Personnel Board on December 16, 2011. *See id.* ¶¶ 45-48.

In May 2012, the Honorable Alan Malott, State District Judge for the Second Judicial District of the State of New Mexico, dismissed Mr. Salazar's appeal from the Personnel Board's order for lack of prosecution. *See Salazar v. City of Albuquerque, et al.*, No. Civ. 10-645-JB-KK, Order, ECF No. 53-1, and Mem. Op. and Order 57, ECF No. 105.[1] On June 29, 2012, Mr. Salazar filed a First Amended Complaint in *Salazar* I, adding factual allegations regarding the process he received since the filing of the first federal suit, including the attempt to transfer him to the Solid Waste Department, the attempt to reinstate him in April 2011, the changes made to the Modified Findings arising from the November 9, 2011 Personnel Board meeting, and his March 28, 2012 termination. *See id.*, First Am. Compl. ¶¶ 32-61, ECF No. 48. Ms. Forney was not a named defendant in *Salazar* I, although she was listed as a conspirator in the civil conspiracy count. *See id.* ¶ 97.

On February 20, 2013, Mr. Salazar filed this lawsuit in state court arising from his March 28, 2012 termination based on denial of due process and other state law claims. Compl. ¶¶ 52-96, ECF No. 1-1. Defendants removed the suit to federal court ("*Salazar* II"). Notice of Removal, ECF No. 1. In her Answer, Ms. Forney also asserted counterclaims against Mr. Salazar for malicious abuse of process and prima facie tort. Answer, ECF No. 17 at 18-19 of 20.

---

[1] The Court may consider court records without converting a motion to dismiss into a motion for summary judgment. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *St. Louis Baptist Temple, Inc. v. Federal Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (noting that court is permitted to take judicial notice of its own files and records and facts that are a matter of public record).

On May 3, 2013, Ms. Forney filed a motion in *Salazar* II to dismiss the due process claim against her based on qualified immunity and to dismiss all state claims against her (malicious abuse of process, wrongful termination, breach of contract, intentional infliction of emotional distress, interference with attorney-client relationship, and civil conspiracy) for failure to state claims.  Def. Forney's Mot. to Dismiss, ECF No. 24.

## II. STANDARD

The Court can dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Plaintiff's complaint must set forth factual allegations that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It is not enough for a plaintiff to just set forth labels, conclusions, and formulaic recitation of the elements of a cause of action. *Id.* "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir 2012).

When reviewing a plaintiff's complaint in ruling on a 12(b)(6) motion, the court must accept all well-pleaded allegations as true. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).  The court must view the allegations in the light most favorable to the plaintiff. *Id.*  The Court "will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik*, 671 F.3d at 1191.  This plausibility standard does not require evidence of probability, "but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. ANALYSIS

Defendant Forney argues that, according to the complaint, she was acting as either an employee of the City or as an attorney under contract for the City, and thus, is shielded by the qualified immunity doctrine. She contends that the allegations do not show that she violated any of Plaintiff's clearly established constitutional rights, but instead merely represented her client in administrative and legal proceedings. Finally, she argues that all the state law claims against her must be dismissed because she cannot be held liable under state law for her actions as an attorney for the adverse party in personnel board proceedings and litigation.

### A.     Section 1983 Claims

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The purpose of the doctrine is to help "avoid 'unwarranted timidity' in performance of public duties, ensuring that talented candidates are not deterred from public service, and preventing the harmful distractions from carrying out the work of government that can often accompany damages suits." *Filarsky v. Delia*, 132 S.Ct. 1657, 1665 (2012) (quoting *Richardson v. McKnight*, 521 U.S. 399, 409-11 (1997)). This protection applies to individuals working for the government on the public's business regardless of whether the individual works full-time for the government or on some other basis. *See id.* It is undisputed that Ms. Forney was working on behalf of the City as either an Assistant City Attorney or as an attorney retained under contract to work for the City and advise it in personnel matters. The Court thus finds that Ms. Forney is entitled to seek the protection of qualified immunity, and will therefore turn to the merits of that defense. *Cf. Filarsky*, 132 S.Ct. at 1667-68 (holding that attorney retained by City to assist in conducting

official investigation into employee's potential wrongdoing was entitled to protections of qualified immunity, even though he was not permanent, full-time employee of city).

When a defendant raises the qualified immunity defense, the burden shifts to the plaintiff, who must meet a strict two-part test of showing that: (1) the defendant violated a constitutional or statutory right and (2) the right was clearly established at the time of the conduct. *See Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000). As to the first inquiry, the question is whether the facts alleged, which are taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional or statutory right. *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002). The second inquiry is more specific than whether the officer's conduct violated a constitutional or statutory right; the question is whether it would be clear to a reasonable officer that his conduct was unlawful under the circumstances he confronted. *Saucier v. Katz*, 533 U.S. 194, 202 (2001). "[T]he right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established." *Wilson v. Layne*, 526 U.S. 603, 615 (1999) (citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). Moreover, "in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Morris v. Noe*, 672 F.3d 1185, 1196 (10th Cir. 2012) (quoting *Klen v. City of Loveland, Colo.*, 661 F.3d 498, 511 (10th Cir. 2011)). The essence of the second prong is whether the state of the law at the time of the incident gave the defendants "fair warning" that their alleged conduct was unconstitutional. *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014).

The Due Process Clause of the Fourteenth Amendment provides that no State may "deprive any person of life, liberty, or property, without due process of law...." The Due Process

Clause protects individuals against two types of governmental action: (1) "substantive due process" prevents the government from engaging in action that "shocks the conscience" or "interferes with rights implicit in the concept of ordered liberty," and (2) "procedural" due process ensures that government action is implemented in a fair manner. *See United States v. Salerno*, 481 U.S. 739, 746 (1987) (internal quotations omitted) (discussing Fifth Amendment Due Process Clause).

To determine whether an individual's procedural due process rights were violated, a court considers (1) whether the individual possessed a constitutionally protected property interest in employment, and (2) whether the individual was afforded the appropriate level of process. *See Camuglia v. The City of Albuquerque*, 448 F.3d 1214, 1219 (10th Cir. 2006) (quoting *Clark v. City of Draper*, 168 F.3d 1185, 1189 (10th Cir. 1999)). There is no dispute here that Plaintiff had a constitutionally protected property interest in his employment. As for the second inquiry, generally due process requires some sort of a hearing prior to the government's acts that impair that interest, but the hearing need not necessarily provide all or most of the protections afforded by a trial. *Id.* at 1220. To evaluate the constitutionality of post-termination procedures, a court must view it in light of the pre-termination procedures it follows. *See Copelin-Brown v. New Mexico State Personnel Office*, 399 F.3d 1248, 1255 (10th Cir. 2005). "Because the post-termination hearing is where the definitive fact-finding occurs, there is an obvious need for more formal due process protections at that point." *West v. Grant County*, 967 F.2d 362, 368-69 (10th Cir. 1992) (quoting *Powell v. Mikulecky*, 891 F.2d 1454, 1458 (10th Cir. 1989)).

Plaintiff argues that he has stated a claim against Ms. Forney for "compromising the Personnel Board's hearing process" and violating "Mr. Salazar's right to a full and fair hearing before a neutral decision-maker." Pl.'s Resp. 4-5, ECF No. 25. Plaintiff argues that this claim

arises from Ms. Forney's actions in assigning Mr. Salazar to the Solid Waste department, recommending to the City that it reinstate Mr. Salazar to the position of bus driver on April 12, 2011, and representing the City before the Personnel Board and drafting the Modified Findings, as requested by the Board. *See id.* at 3-5.

Plaintiff has cited no case law in support of his argument that he has stated a due process claim against Ms. Forney. Plaintiff has therefore not carried his burden of showing that Ms. Forney had fair notice under the law that her conduct was unlawful under the circumstances she confronted. *See Smith v. McCord*, 707 F.3d 1161, 1162 (10th Cir. 2013) (affirming summary judgment on qualified immunity where plaintiff did not meet burden to show defendant violated clearly established constitutional rights).

Moreover, Plaintiff has not shown that Ms. Forney's actions violated his procedural due process rights. The Complaint does not contain allegations that Ms. Forney was involved in the decision to transfer Mr. Salazar to the Solid Waste Department. As for Ms. Forney's recommendation to reinstate Mr. Salazar to the bus driver position in April 2011, Plaintiff has not shown how this recommendation, which was to reinstate him to the position he sought, violated his rights because his appeal before the Personnel Board had not yet been resolved. Instead, these facts demonstrate that the post-deprivation hearing process gave him the reinstatement remedy he sought.

As for Ms. Forney's actions at the November 9, 2011 Personnel Board hearing, she was representing the City and in that role answered questions posed by the Board members and drafted Modified Findings that included a provision that limited Mr. Salazar's entitlement to back pay. Plaintiff asserts that the fact that the Personnel Board adopted the City's Modified Findings without review by the full Board or meaningful opportunity for Mr. Livingston to

object shows a biased process because the assistant city attorney represented both the Personnel Board and City management. Plaintiff's own allegations, however, show that the full Board considered Mr. Salazar's case during a closed meeting and announced its findings in favor of the City at the hearing. Compl. ¶ 40, ECF No. 1-1. Plaintiff's allegations do not show that Ms. Forney compromised the hearing process and violated clearly established law.

Most significantly, Plaintiff had access to both pre- and post-deprivation proceedings. He had the opportunity to present his side of the story before the Personnel Board, and he could, and did, appeal the Personnel Board's December 16, 2011 Modified Findings. He failed, however, to prosecute his claims on appeal, and the appeal was dismissed. Additionally, Plaintiff admits that he did not report for work any time after the April 2011 notice of reinstatement or the January 17, 2012 notice of reinstatement. *See* Compl. ¶¶ 30-32, 44-48, ECF No. 1-1. Where a plaintiff resigns of his own free will, even as a result of the defendant's actions, then he voluntarily relinquishes his property interests and was not deprived of property without due process of law. *Garcia v. City of Albuquerque*, 232 F.3d 760, 770 (10th Cir. 2000). Plaintiff therefore voluntarily relinquished his property interest and has not stated a due process claim. *Cf. id.* at 770 ("The City, in compliance with the Personnel Board's order, reinstated Garcia's employment, albeit to a different position with the same hours and rate of pay. Not satisfied with being transferred to a different position, however, Garcia repeatedly refused to report to work, ultimately leading the City to designate him as being 'AWOL.' Since Garcia clearly had the option of returning to work, we hold that his actions constitute a voluntary resignation…. Moreover, Garcia was afforded three opportunities to challenge the City's actions before neutral bodies: (1) the initial Board hearing, (2) the state court proceedings, and (3) the final Board hearing. In the circumstances, Garcia received all of the process that he was due.").

Mr. Salazar has not demonstrated that Ms. Forney can be held liable for her actions in representing the City in the administrative and legal proceedings relating to his termination or for the alleged lack of independence in the Personnel Board procedures. Because Plaintiff has failed to carry his burden after assertion of the qualified immunity defense, the Court will dismiss Plaintiff's due process claim (Count 1).[2]

### B. State Law Claims

Defendant Forney argues that all the state law claims against her must be dismissed because she cannot be held liable for her conduct in representing her client against Mr. Salazar. Plaintiff argues that the cases cited concern an attorney's obligations to his clients under a malpractice standard not at issue in this case. The Court agrees with Plaintiff that the authority Defendant Forney cites involves the lack of a duty in causes of action for negligence, negligent misrepresentation, promissory estoppel, and defamation cases. *See*, *e.g.*, *Garcia v. Rodey, Dickason, Sloan, Akin & Robb, P.A.*, 1988-NMSC-014, ¶¶ 11-13, 17, 23-24, 750 P.2d 118 (holding that opposing counsel cannot be held liable for negligence, negligent misrepresentation, or promissory estoppel to third party non-clients because there is no duty to protect adverse party); *Gelinas v. Gabriel*, 1987-NMCA-097, ¶ 3, 741 P.2d 443 (affirming summary judgment for attorney in defamation claim because defamatory statement of attorney is absolutely privileged if reasonably related to judicial proceedings). Nevertheless, the Court agrees with Defendant Forney that she cannot be held liable for the asserted claims against her based on her actions as an attorney representing an opposing party in administrative proceedings.

### 1. Malicious Abuse of Process (Count 3)

---

[2] The Court also rejects Plaintiff's arguments that, by asserting a counterclaim in this case, Ms. Forney waived her qualified immunity defense. The cases Plaintiff cites for this argument do not apply to qualified immunity and are distinguishable.

In Count 3, Plaintiff alleges a malicious abuse of process claim against Defendant Forney. The elements of a malicious abuse of process claim are: (1) the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge; (2) a primary motive in the use of process to accomplish an illegitimate end; and (3) damages. *Durham v. Guest*, 2009-NMSC-007, ¶ 29, 145 N.M. 694. Misuse of process can be shown in one of two ways: (1) filing a complaint without probable cause, or (2) an irregularity or impropriety suggesting extortion, delay, or harassment. *Fleetwood Retail Corp. of N.M. v. LeDoux*, 2007-NMSC-047, ¶12, 142 N.M. 150.

Plaintiff asserts that Ms. Forney abused the hearing process by deliberately transferring him to Solid Waste and then firing him when he did not report to work. According to Plaintiff's own allegations, however, Ms. Forney did not transfer him to Solid Waste. *See* Compl. ¶ 24, ECF No. 1-1 (alleging that David Campbell ordered transfer based on recommendation by City's Human Resources Director). Plaintiff also alleges that Ms. Forney misrepresented to the Personnel Board that an order was needed for Plaintiff to go to work because he would not appear. Even if that statement were misleading, Ms. Forney cannot be held liable for it when it was made in a quasi-judicial setting arising from her representation of her client. *Cf. Gelinas*, 1987-NMCA-097, ¶¶ 1-3 (affirming summary judgment for attorney in defamation claim because defamatory statement of attorney is absolutely privileged if reasonably related to judicial proceedings in course of which statement was made). *See also Zamora v. Village of Ruidoso Downs*, 1995-NMSC-072, ¶ 9, 907 P.2d 182 (finding that personnel board was acting it quasi-judicial capacity when it convened to investigate facts surrounding employee's discharge and to determine whether termination violated ordinance). Finally, Plaintiff asserts that Ms. Forney abused the process by drafting the Personnel Board's Modified Findings at the chairman's

request. An attorney's act of drafting a proposed order at the request of the tribunal who has indicated it wishes to rule for the attorney's client does not amount to an improper act in a judicial process. For all the foregoing reasons, Plaintiff's malicious abuse of process claim therefore must be dismissed as a matter of law.

### 2. Wrongful Termination (Count 4) & Breach of Contract (Count 5)

Municipalities may establish by ordinance a merit system for hiring, promotion, and discharge of municipal employees, and may create a personnel board to administer the ordinance. *Zamora*, 1995-NMSC-072, ¶ 8 (quoting N.M. Stat. Ann. § 3-13-4(A)). "The ordinance is a 'contract of employment between the municipality and an employee….'" *Id.* ¶ 8 (quoting N.M. Stat. Ann. § 3-13-4(C)). Only a party to a contract can breach the contract, because only a party to a contract assumes a contractual duty. *See* NM UJI 13-822 (defining breach of contract as a person's failing to perform a contractual obligation); Restatement (Second) of Contracts § 235 ("When performance of a duty under a contract is due any non-performance is a breach."). Ms. Forney, as the City's representative, cannot be held personally liable for any breach of contract by the City. *Cf. Ettenson v. Burke*, 2001-NMCA-003, ¶ 25, 17 P.3d 440 ("an agent is not prone to contract liability because an 'agent for a disclosed principal is not a party to any contract entered into on behalf of the principal'") (quoting *Kreischer v. Armijo*, 118 N.M. 671, 675, 884 P.2d 827, 831 (Ct. App. 1994)). As there is no allegation in the complaint that Ms. Forney personally made or assumed any contractual duties, Plaintiff's breach of implied contract claim against her must be dismissed.

Plaintiff nonetheless alleges that the City acted under Ms. Forney's direction to wrongfully terminate Mr. Salazar's employment on March 28, 2012. As an initial matter, Plaintiff's conclusory allegation that Ms. Forney directed the wrongful termination is at odds

with his allegations that, under the City's Merit System Ordinance, the Mayor designates the Chief Administrative Officer to administer the merit system and to discharge employees for just cause. *See* Compl. ¶¶ 50-51. Moreover, as discussed *supra* in Section III(A), Plaintiff's Complaint demonstrates that he voluntarily resigned by failing to report to work when he was reinstated to his position as a Motor Coach Operator and received the process due him. He cannot state a claim against Ms. Forney for wrongful termination or breach of contract.

### 3. Intentional Infliction of Emotional Distress (Count 6)

To prove a claim for intentional infliction of emotional distress, the plaintiff must show that the defendant's conduct was extreme and outrageous under the circumstances; the defendant acted intentionally or recklessly; and as a result of the conduct the plaintiff experienced severe emotional distress. *Coates v. Wal-Mart Stores, Inc.*, 1999-NMSC-013, ¶ 47, 976 P.2d 999. Extreme and outrageous conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Stieber v. Journal Pub. Co.*, 1995-NMCA-075, ¶ 15, 901 P.2d 201 (citation and quotations omitted). Only in extreme circumstances can the act of firing of an employee support an intentional infliction of emotional distress claim. *See Trujillo v. Northern Rio Arriba Elec. Co-op, Inc.*, 2002-NMSC-004, ¶ 27, 41 P.3d 333 (2001). The "severe" emotional distress required to recover under this tort means that a reasonable person would be "unable to cope adequately with the mental distress engendered by the circumstances" and no reasonable person could be expected to endure it. *Id.* ¶ 28 (quotations omitted). As a matter of law, the allegations in this case against Ms. Forney do not amount to extreme and outrageous conduct that is beyond the bounds of acceptable conduct to support an intentional infliction of emotional distress claim. The Court will therefore dismiss Count 6.

### 4. Interference with Attorney-Client Relationship (Count 7)

To establish tortious interference with a contract, the plaintiff must prove that (1) the defendant had knowledge of the contract between the plaintiff and a third party, (2) performance of the contract was refused, (3) the defendant played an active and substantial part in causing the plaintiff to lose the benefits of his contract, (4) damages flowed from the breached contract, and (5) the defendant induced the breach without justification or privilege to do so. *Ettenson*, 2001-NMCA-003, ¶ 14. A defendant acts without justification or privilege when he acts either with an improper motive or by use of improper means. *See id.*

Plaintiff has not alleged that Ms. Forney's actions caused Plaintiff to lose the benefits of his contract or that that either Plaintiff or Mr. Livingston refused any performance based on the contract. Plaintiff has not shown how reinstating him to his position as a bus driver in April 2011 interfered with his contract with his attorney. The allegation that Ms. Forney argued before the Personnel Board that attorney's fees are not permitted as part of a remedy against the City, in her role as attorney for the City, does not support a claim for interference with the relationship between her opposing counsel and his client because she was acting in her client's interest. The allegations fail to establish that Ms. Forney had an improper motive or that she used improper means, and thus, the Court will dismiss Count 7.

### 5. Conspiracy (Count 8)

"A civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Seeds v. Lucero*, 2005-NMCA-067, ¶ 12, 113 P.3d 859 (internal quotations omitted). "The purpose of a civil conspiracy claim is to impute liability to make members of the conspiracy jointly and severally liable for the torts of any of its members." *Id.* A plaintiff must show that (1) a conspiracy between two or more

persons existed; (2) specific wrongful acts were carried out by the defendants pursuant to the conspiracy; and (3) the plaintiff was damaged as a result of the acts. *Id.* ¶ 18.

Plaintiff's claim against Defendant Forney is that she conspired with others to preclude Mr. Salazar's return to work. Plaintiff, however, does not allege any facts that Ms. Forney was involved in the decision or had an agreement with others to transfer Plaintiff to the Solid Waste Department. Instead, the only allegations against Ms. Forney regarding preventing Plaintiff from returning to work as a bus driver are her actions in representing the City before the Personnel Board where she represented that an order was needed for Plaintiff to go to work because he would not appear and then she, at the Personnel Board's request, drafted proposed modified findings and conclusions. Those Modified Findings led to a provision being inserted in the order from the Board limiting "back pay after April 23, 2011 when he refused to return to work at Transit, until he appears for work." Compl. ¶ 42, ECF No. 1-1. The order indicated, however, that Ms. Forney anticipated Plaintiff would return to his position as bus driver. Indeed, the City issued to Mr. Salazar another "Notice to Report for CDL Physical and Drug Screen to Return-to-Work" on January 17, 2012. *Id.* ¶ 44. The allegations against Ms. Forney are insufficient to state a plausible claim that she conspired to deny Plaintiff his rights by precluding him from returning to work as a bus driver. The Court will therefore dismiss the civil conspiracy claim against her.

**IT IS THEREFORE ORDERED** that

1.      Defendant Paula Forney's Motion to Dismiss (**ECF No. 24**) is **GRANTED** and all claims against her are **DISMISSED WITH PREJUDICE**.

  2.  Within **10 days of entry** of this Memorandum Opinion and Order, Counter-Plaintiff Paula Forney must file with the Court a written report on the status of her counterclaims against Mr. Salazar.

                     _____
                      **UNITED STATES DISTRICT JUDGE**